IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JIM NOVOTNEY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WALGREEN COMPANY,<br><br>Defendant. | No: 22 CV 3439 |

Defendant Walgreen Company ("Walgreens") respectfully submits this memorandum of law in support of its motion to dismiss the Complaint under Fed. R. Civ. P. 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiff brings state law claims alleging that the label on Walgreens's over-the-counter hydrogen peroxide is false and misleading. According to Plaintiff, some "prominent" physicians now believe hydrogen peroxide does more harm than good as an antiseptic. The United States Food and Drug Administration ("FDA"), however, disagrees with Plaintiff and allows the label on hydrogen peroxide to state what Plaintiff contends is misleading: that it can be used "for treatment of minor cuts and abrasions."[1] Because the FDA determines the labeling requirements, federal law preempts Plaintiff's claim about this statement.

Put simply, federal law prohibits claims and theories, like Plaintiff's, that would impose labeling requirements "different from," "in addition to," or "otherwise not identical" with federal

---

[1] Plaintiff also mentions in passing that "[t]he statement that the Product is 'Walgreens Pharmacist Recommended' . . . causes consumer harm through promoting purchase of the Product." Compl. ¶ 42. This statement, though not expressly preempted, could not possible confuse a reasonable consumer. *See infra* Section B.2 at 12-13.

1

labeling requirements. 21 U.S.C. § 379r(a). The courts in this District have recognized, "[w]ith respect to the labeling of OTC drugs, the whole point of section 379r is that it is not up to private litigants—or judges—to decide what is 'false and misleading.'" *Harris v. Topco Assocs., LLC*, 538 F. Supp. 3d 826, 831 (N.D. Ill. 2021) (quoting *Bowling v. Johnson & Johnson*, 65 F. Supp. 3d 371, 376-77 (S.D.N.Y. 2014)). Thus, Plaintiff's claim is expressly preempted by the federal regulatory scheme favoring national uniformity of labeling requirements and liability. *See* 21 U.S.C. § 379r(a) (entitled "National uniformity for nonprescription drugs"). Worse, the Complaint utterly fails to plead essential elements of any claim.

## STATEMENT OF FACTS

Walgreens manufactures, labels, markets, and sells 3% hydrogen peroxide (the "Product") under the Walgreens brand. Compl. ¶ 1. The Product's front label says, among other things, that it is a "first aid antiseptic" and an "oral debriding agent."[2] *Id.* ¶ 14. The front label also says that the Product can be used "for treatment of minor cuts & abrasions." *Id.* ¶ 15. The Product's back label says, among other things, that "[o]ur pharmacists recommend the Walgreens brand," and "Walgreens Pharmacist Recommended." *Id.* ¶¶ 16-17. The back label also says to apply only a "small amount of product on the affected area 1-3 times a day," and that the user should "[a]sk a doctor before use if you have deep puncture wounds, animal bites or serious burns." *Id.*

The FDA regulates the labeling of the Product pursuant to a 1991 Tentative Final Monograph ("TFM"). *See FDA, Topical Antimicrobial Drug Products for Over-the-Counter Human Use; Tentative Final Monograph for First Aid Antiseptic Drug Products*, 56 Fed Reg. 33644 (July 22, 1991). On September 21, 2021, that tentative final monograph became "final" under the Coronavirus Aid, Relief, and Economic Security Act, also known as the CARES Act.

---

[2] Plaintiff acknowledges that the Product "has antiseptic properties," *id.* ¶ 19, and can "remove debris and microorganisms from the affected area that might slow the healing process," *id.* ¶ 41.

*See* 21 U.S.C. § 355h(b)(8)(A); *Harris*, 538 F. Supp. 3d at 832; 86 Fed. Reg. 52474. The FDA also requires a first aid antiseptic, like the Product, to identify itself as a "first aid antiseptic" and describe its use as follows: "first aid to help prevent the risk of infection in minor cuts, scrapes, and burns." 56 Fed. Reg. at 33677 (cleaned up).

Plaintiff claims that such labeling is "false and misleading because no credible scientific and medical evidence supports this usage of hydrogen peroxide." Compl. ¶ 18.

## LEGAL STANDARD

Rule 8 requires a plaintiff to allege facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). A plaintiff cannot rely on mere "labels and conclusions." *Id.* Claims alleging fraud must also comply with the heightened pleading standard of Rule 9(b). *Willard v. Tropicana Mfg. Co., Inc.*, No. 20-cv-01501 (FUV), 2021 WL 6197079, at *2 (N.D. Ill. Dec. 30, 2021).

## ARGUMENT

Federal law preempts Plaintiff's core claim challenging the "for treatment of minor cuts and abrasions" statement. Even if that were not true, the Complaint would still be subject to dismissal for failure to plead the elements of any state law cause of action.

### A. PLAINTIFF'S CLAIMS ABOUT THE STATEMENT "FOR TREATMENT OF MINOR CUTS AND ABRASIONS" ARE PREEMPTED.

The Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 *et seq.*, expressly preempts Plaintiff's state law claim that the label statement "for treatment of minor cuts and abrasions" is misleading. The FDCA provides that state law claims (like those alleged here) that seek to impose

3

labeling requirements "different from," "in addition to," or "otherwise not identical" with federal labeling requirements are expressly preempted. 21 U.S.C. § 379r(a). Plaintiff claims that the "for treatment of minor cuts and abrasions" statement is "false and misleading" because there is (supposedly) (1) "no credible scientific and medical evidence [that] supports this usage of hydrogen peroxide," Compl. ¶ 18; and (2) it "tells the consumer hydrogen peroxide will assist in the healing process and shorten healing time" even though "hydrogen peroxide does not treat minor cuts and abrasions," *id*. at ¶¶ 25-26. Yet the FDA found the exact opposite to be true.

To begin, the FDA regulates the marketing of the Product for antiseptic use pursuant to a 1991 TFM.[3] *See* 56 Fed. Reg. 33644 (July 22, 1991). There, the FDA determined that (1) "[h]ydrogen peroxide achieves its intended benefit in vivo by means of both a mechanical action and a measurable antibacterial action" and (2) "[b]ecause hydrogen peroxide has been demonstrated to be both safe and effective for use in minor wounds, the agency is proposing to classify hydrogen peroxide (3 percent in aqueous solution) as Category I for use as a first aid antiseptic drug product." 56 Fed. Reg. at 33659;[4] *see also id*. at 33673 (listing hydrogen peroxide topical solution as among the ingredients "generally recognized as safe and effective for OTC first aid use within the established concentration(s)"). The FDA went on to define a first aid antiseptic as "[a]n antiseptic containing drug product" (like the Product) that is "applied topically to the skin to help prevent infection in minor cuts, scraps, and burns." 56 Fed. Reg. at 33677 (listing hydrogen peroxide topical solution as one of a number of "first aid active ingredients").

---

[3] The CARES Act made the TFM "final" and the FDA confirmed that by "deeming" it final. *See* 86 Fed. Reg. 52474 (FDA Rule deeming first aid tentative monograph final). Finalizing the monograph confirms that the Product is "safe and effective" and is a rejection of the supposed science advanced by Plaintiff. *See id*.

[4] Category I ingredients in nonprescription drug products (like the Product) are ingredients determined by the FDA to be "generally recognized as safe and effective." 21 C.F.R. § 330.10(a)(6)(i).

The FDA also requires the label of first aid antiseptics to say that the product is a "first aid antiseptic" and describe the product's use as follows: "first aid to help prevent the risk of infection in minor cuts, scrapes, and burns."  56 Fed. Reg. at 33677 (cleaned up).  That is exactly what the bottle of the Product says.  *See* Compl. ¶ 14 ("The Product is identified as a "First Aid Antiseptic"); *id*. at ¶ 16 ("The back panel Drug Facts identifies the 'Active ingredient [as] Hydrogen Peroxide 3%,' described as a 'First aid antiseptic/oral debriding agent' that is 'Use[d] [as] first aid to help prevent the risk of infection in minor cuts, scrapes, and burns.'").

Plaintiff's state law claims are still preempted regardless of the efficacy of the Product's antiseptic properties because the Product label is consistent with FDA labeling requirements.  Take *Turek v. General Mills, Inc.*, for example, where the court held preemption may apply even if a challenged statement has never been expressly approved by the FDA.  662 F.3d 423, 426 (7th Cir. 2011).  In *Turek*, the plaintiffs alleged that the front label of a "chewy bar" was misleading because it stated "35% of your daily fiber," though according to the plaintiffs some of this was inferior "non-natural" fiber.  *Id*. at 425-26.  Though the statement was consistent with FDA requirements, the FDA had never expressly approved the statement; indeed, the plaintiffs had argued that because the regulations did not cover "front-of-package labeling" at all, defendants could be forced to stop making the statement or to include a disclaimer.  *See Turek v. General Mills, Inc.*, 754 F. Supp. 2d 956, 960-62 (N.D. Ill. 2010).  The district court held that express preemption barred the claim, and the Seventh Circuit affirmed despite the FDA never expressly approving the challenged statement. 662 F.3d at 427.[5]

---

[5]  *See also, e.g.*, *Robinson v. Walgreen Co.*, No. 20-cv-50288, 2022 WL 204360, at *4-5 (N.D. Ill. Jan. 24, 2022) (holding preemption barred claim that using unapproved term "Infant" on front label was misleading); *see also Bimont v. Unilever United States, Inc.*, No. 14-cv-7749-JPO, 2015 WL 5256988, at *3-4 (S.D.N.Y. Sept. 9, 2015) (citing *Turek* and rejecting argument that preemption applies only when the FDA has already specifically addressed proposed requirement); *In re PepsiCo, Inc., Bottled Water Mktg. and Sales Prac. Litig.*, 588 F. Supp. 2d 527, 538-39 (S.D.N.Y. 2008) (rejecting argument that state

The same result holds with the "for treatment of minor cuts and abrasions" statement on the front of the Product's label, because preemption may apply even if the challenged statement has never been approved by the FDA. When determining that the Product "achieves its intended benefits," the FDA noted the then-current marketing of 3% hydrogen peroxide as a "first aid antiseptic" labeled "[f]or treatment of minor cuts and abrasions." 56 Fed. Reg. at 33659. The FDA also noted that "OTC first aid antiseptics are used for the first aid treatment of minor cuts, scrapes, and burns, as are OTC first aid antibiotics," and stated that "the agency believes that the indications for those two categories of drugs should be similar." *Id*. at 33674. The FDA then determined that "[t]he term 'scrapes'" should be "substituted for the term 'abrasions in the labeling" for "first aid antiseptics, which is consistent with the first aid antibiotic monograph." *Id*. at 33675.

In other words, the challenged statement—"for treatment of minor cuts and abrasions"—is entirely consistent with what the FDA requires on the label.[6] And, critically, the FDA has not prohibited such statements.[7] In fact, the FDA allows using any "[o]ther truthful and nonmisleading statements" to further describe the Product's use as "first aid to help prevent the risk of infection in minor cuts, scrapes, and burns." 56 Fed. Reg. at 33677 (cleaned up). Plaintiff's claim that the statement "for treatment of minor cuts and abrasions" is false or misleading is preempted.

---

requirements are permitted "as long as federal law does not expressly prohibit or permit the specific labeling at issue").

[6] *See Scrape*, Merriam-Webster.com, "a mark or injury caused by scraping: ABRASION," https://www.merriam-webster.com/dictionary/scrape (last visited Nov. 4, 2022); *Treatment*, Merriam-Webster.com, "the action or manner of dealing with something," or "something (such as a product or technique) used in treating, enhancing, or improving the performance, condition, or appearance of someone or something," https://www.merriam-webster.com/dictionary/treatment (last visited Nov. 4, 2022).

[7] "For plaintiffs to establish that their state law claims are not preempted, it is insufficient to show that the FDA has not permitted the label [at issue.] Rather, plaintiffs would need to plead facts suggesting that the FDA has affirmatively ***prohibited*** the label. Otherwise, plaintiffs' state law causes of action would be, in effect, imposing a labeling requirement that is 'not identical with' labeling requirements under federal law." *Bowling*, 65 F. Supp. 3d at 376 (emphasis in original).

### B. THE COMPLAINT FAILS TO STATE A CLAIM.

Even if there was not a federal regulatory scheme that expressly preempted Plaintiff's claims, those claims would still fail under Rule 12(b)(6). Plaintiff (1) fails to allege any non-Illinois class claims; (2) has not adequately pleaded claims under the Illinois Consumer Fraud Act ("ICFA") or for unjust enrichment and common law fraud; (3) fails to plead breach of express warranty, implied warranty, or violation of the Magnuson-Moss Warranty Act; and (4) fails to plead negligent misrepresentation.

**1. Plaintiff fails to allege any non-Illinois class claims.**

Plaintiff, a resident and citizen of Illinois, purports to bring claims on behalf of a multi-state class including "[a]ll persons in the States of Montana, Louisiana, South Carolina, Wyoming, Idaho, Kentucky, Kansas, Iowa, Mississippi, and Utah . . . for each cause of action alleged." Compl. ¶ 86. But Plaintiff never explains what law might apply to the claims of such a class. He asserts that "[t]he Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce." Compl. ¶ 100. That is a legal conclusion, not a fact, and it is wrong. "State consumer-protection laws vary considerably, and courts must respect these differences rather than apply one state's law to sales in other states with different rules." *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1018 (7th Cir. 2002).

As a result, "other warranty, fraud, or products liability suits may not proceed" together in a single class that crosses state boundaries. *Id*. at 1015. Because Plaintiff is proposing the same type of nation-wide class proposed in *In re Bridgestone*, the Court should dismiss his claims to the extent they "attempt to assert claims on behalf of class members in states where they do not reside and were not injured." *Smith-Brown v. Ulta Beauty, Inc.*, No. 18-cv-610, 2019 WL 932022, at *5-6 (N.D. Ill. Feb. 26, 2019).

## 2. Plaintiff has not adequately pleaded the ICFA, unjust enrichment, or common law fraud claims.

The Complaint fails to plead claims under ICFA or for unjust enrichment. To prevail on an ICFA claim, a plaintiff must prove (1) a deceptive act; (2) that the defendant intended to deceive; (3) conduct in trade or commerce; (4) actual damage; and (5) that the deception proximately caused the damage. *Avery v. State Farm Auto. Ins. Co.*, 835 N.E.2d 801, 850 (Ill. 2005). Both materiality and reliance are required for fraud claims based on affirmative misrepresentation and omission. *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 736 (7th Cir. 2019). The Complaint fails to satisfy Rule 8, let alone the heightened standard of Rule 9(b).

### a. The ICFA claim fails under Rule 9(b).

Under Rule 9(b), the "circumstances constituting fraud" or any other claim that "sounds in fraud" must be stated "with particularity." Fed. R. Civ. P. 9(b). "Specifically, the complaint must identify the "who, what, when, where, and how" of the alleged fraud." *Vanzant*, 934 F.3d at 738.

Here, Plaintiff fails to allege with particularity the circumstances surrounding (1) why the affirmative representations and/or omissions were of a "material fact" that would have affected Plaintiff's decision to purchase, and (2) Plaintiff's reliance on both the alleged affirmative misrepresentations and omissions. The allegations of these elements are limited to two conclusory paragraphs. Compl. ¶¶ 96, 98; *see also Arroyo v. Chattem, Inc.*, 926 F. Supp. 2d 1070, 1078 (N.D. Cal. 2012) (granting motion to dismiss deceptive acts claim where plaintiff failed to allege materiality and reliance with particularity).

### b. The ICFA claim fails under Rule 8.

Further, no reasonable consumer could be misled by the Product's label. *See Akers v. Costco Wholesale Corporation*, No. 3:21-cv-01098, 2022 WL 4585417, at *2 (S.D. Ill. Sept. 29, 2022) ("Courts apply the 'reasonable consumer' standard to analyze the likelihood of deception.").

8

"This standard requires a 'practical and fact-intensive approach to consumer behavior" and must be evaluated in light of the totality of the information made available to the consumer.'" *Id.* (quoting *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 477-78 (7th Cir. 2020)). The most important consideration is how real consumers understand and react to the advertising. *Id.* Plaintiff's claim can only survive a motion to dismiss if he plausibly alleges that the Product's label "will likely lead a significant portion of the general consuming public or targeted consumers, acting reasonably, to falsely believe" a material fact about the Product. *Id.* The allegations fall well short of this standard.

Plaintiff's claim is, at bottom, that there are other, better ways to treat minor cuts and abrasions than 3% hydrogen peroxide. *See* Compl. ¶ 19 (alleging that "hydrogen peroxide has antiseptic properties," but does "more harm than good"); *id.* ¶ 41 (acknowledging that hydrogen peroxide "remove[s] debris and microorganisms from the affected area that might slow the healing process, so it allows the body's healing process to follow its usual course of repair at a normal rate"). But even Plaintiff's own purported authorities, four of which are from commercial news and wellness websites, do not actually denounce the usefulness of hydrogen peroxide as topical antiseptic for minor cuts and abrasions. Plaintiff cites a USA Today opinion column that states: "One of the more dangerous medical myths I frequently see ***in the ER*** is the widespread belief by patients that ***copious amounts*** of hydrogen peroxide should be used to clean cuts and scrapes ***of any size*** . . . . While ***hydrogen peroxide does have known antiseptic properties***, it ***may*** do more harm than good when it comes to wound care." M. Daignault, USAT<small>ODAY</small>, *Everyone puts hydrogen peroxide on their wounds. They really shouldn't* (Feb. 24, 2022) (emphasis added), https://www.usatoday.com/story/life/health-wellness/2022/02/24/hydrogen-peroxide-wounds-

cuts/6908945001/ (last visited Nov. 4, 2022);[8] *see also* Compl. ¶ 9 n.1 (same). Plaintiff also cites an article about the use of 3% hydrogen peroxide in surgeries. *See id.* ¶ 19 n.2. This eleven-year-old article written by an orthopedic surgeon and two anesthesiologists, is irrelevant. It states:

> Hydrogen peroxide solutions are found in almost every operating theatre and are used by many surgical specialties, often with little knowledge of their inherent risk. We reviewed the literature and evidence related to the use of hydrogen peroxide in surgery. . . . We have found very little evidence to support its use as an irrigation solution or as an antiseptic agent, and significant evidence that it is toxic to many human tissues. In addition we found little evidence to support the use of hydrogen peroxide in arthro-plasty and substantial evidence to question whether the risks of its use in neurosurgery outweigh its benefits.

Reid, C.J., Alcock, M., Penn, D., ANAESTHESIA AND INTENSIVE CARE, Vol. 39, Iss. 6, *Hydrogen peroxide – a party trick from the past?* (Nov. 2011), https://www.proquest.com/docview/905897796?parentSessionId=vpSllfsjaKfHRZJ%2FJviC6cpr%2FzEF3qIumx6zcDf5bBk%3D&parentSessionId=0S%2BRrOhM%2Bv%2BBBXiMAUV%2FASoQvi7aSaqGbACSRQO018Gc%3D (last visited Nov. 4, 2022). Plaintiff then cites to a podiatry clinic's blog, where an anonymous user named only "Roger" posted three paragraphs about his views on hydrogen peroxide. This podiatry blog post is actually consistent with the FDA's rules and the Product's label, stating: "A one time application of peroxide to clean a cut or scrap in a healthy individual is a good technique for wound disinfection." Roger, ATLANTIC FOOT & ANKLE SPECIALISTS, *Medical Myth Buster: Hydrogen Peroxide and Wounds* (June 9, 2015), https://www.atlanticfeet.com/blog/medical-myth-buster-hydrogen-peroxide-and-wounds (last visited Nov. 4, 2022); *see also* Compl. ¶ 9 n.1 (same). And even if it supported Plaintiff's allegations (it does not), it would not negate the FDA regulatory scheme.

---

[8] "[T]he incorporation-by-reference doctrine provides that if a plaintiff mentions a document in his complaint, the defendant may then submit the document to the court without converting defendant's 12(b)(6) motion to a motion for summary judgment." *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012).

Plaintiff's next purported authority fares no better. It is about treating acne, wounds, and dark spots on the skin; not "treatment of minor cuts & abrasions." *See* Compl. ¶ 27 n.3. The article's "Recap" section concludes: "In the past, hydrogen peroxide has been used to treat acne, wounds, and dark spots on the skin. Because it can be irritating and may slow healing, doctors no longer recommend it for ***these*** purposes." C. Madormo, VERYWELLHEALTH (Feb. 2, 2022), https://www.verywellhealth.com/hydrogen-peroxide-for-skin-5104959 (last visited Nov. 4, 2022). Plaintiff also cites the health, beauty, and fitness blog "Prevention," that recommends against using hydrogen peroxide "in everyday emergencies." A. Patz, PREVENTION, *9 First Aid Mistakes You're Probably Making* (July 2, 2015) (emphasis added), https://www.prevention.com/ health /a20469350/first-aid-mistakes/ (last visited Nov. 4, 2022); *see also id.* ¶ 9 n.1 (same).

Plaintiff's sixth and final article, *Hydrogen peroxide: more harm than good?*, is also irrelevant. It states, for example:

- "Hydrogen peroxide remains a frequently used agent in operating theatres despite its marginal benefits and potential for serious complications";
- "Although the use of hydrogen peroxide in closed cavities is thought to pose a higher risk of oxygen embolus, instances of oxygen embolus have been reported in many other circumstances, including in vascular, orthopaedic, and spinal surgery";
- "In orthopaedic surgery, hydrogen peroxide has been used for decades to prepare trabecular bone during cemented hip arthroplasty in order to maximize bone–cement strength, although strong evidence is lacking"; and
- "In neurosurgery, in addition to systemic oxygen embolus, the use of hydrogen peroxide has resulted in direct neural toxicity, cerebral infarction, and tension pnemocephalus."

Akuji, M., Chambers, D., BRITISH JOURNAL OF ANAESTHESIA, Vol. 118, Iss. 6, 958-59, *Hydrogen peroxide: more harm than good?* (June 1, 2017), https://www.bjanaesthesia.org.uk/ article/S0007-0912(17)30068-5/fulltext (last visited Nov. 4, 2022); *see also id.* Compl. ¶ 27 n.4 (same). None of these articles even contradicts, let alone abrogates, the Food and Drug Administration's science-based decisions about how to regulate labeling for over-the-counter 3% hydrogen peroxide.

Here, the FDA label actually warns against using "copious amounts" of the Product, which Plaintiff claims does more harm than good. The FDA label instructs consumers to "apply *small amount* of product on affected area," and further says to "Ask a doctor before use if you have deep puncture wounds . . . or serious burns." Compl. ¶¶ 16-17 (emphasis added). The label directly contradicts Plaintiff's allegation that he was misled into thinking that he should be applying copious amounts of the Product to deep wounds. *See id.* ¶ 9 n.1. No reasonable consumer would also misunderstand what the label was saying. *See Akers*, 2022 WL 4585417, at *2 ("Courts apply the 'reasonable consumer' standard to analyze the likelihood of deception. . . . This standard requires a 'practical and fact-intensive approach to consumer behavior' and must be evaluated in light of the totality of the information made available to the consumer.").

Nor is the statement "Walgreens Pharmacists Recommended" an actionable falsehood. To the contrary, in isolation or read in conjunction with the statement immediately below it—"Our pharmacists recommend the Walgreens brand"—these statements are true endorsements by Walgreens of its own brand products.[9] They say nothing more than consumers should purchase the Walgreens brand of the Product. As courts in this circuit have recognized, "[p]harmacist approval should not be interpreted to imply either perfect safety or guaranteed effectiveness." *Hughes v. Chattem, Inc.*, 818 F. Supp. 2d 1112, 1121 (S.D. Ind. 2012) (granting motion to dismiss for failure to state claim under Indiana Deceptive Consumer Sales Act among other claims based on a "pharmacist-recommended" icon); *accord Arroyo*, 926 F. Supp. 2d at 1078 (dismissing claims based on allegation that "#1 Pharmacist Recommended Appetite Suppressant" was materially

---

[9] In a single line in the Complaint that is incorporated by reference into a single count (violation of Illinois' Consumer Fraud and Deceptive Business Practices Act), Plaintiff alleges that the statement "Walgreens Pharmacists Recommended" that appears on the back label of the Product is "contrary to medical and scientific evidence and causes consumer harm through promoting purchase of the Product." Compl. ¶ 42. Directly below that statement—"Walgreens Pharmacists Recommended"—the label also says, "Our pharmacists recommend the Walgreens brand." Compl. ¶ 16.

misleading). As explained above, there is nothing actionable about recommending a product for its FDA approved use. None of Plaintiff's claimed "medical and scientific evidence" can overcome what the FDA has already determined—that the Product "achieves its intended benefit" and it is "both safe and effective for use." 56 Fed. Reg. at 33659.

        ***c. The unjust enrichment and common law fraud claims fail for the same reasons the ICFA claim fails.***

The complaint also seeks restitution for unjust enrichment but, "[u]nder Illinois law, unjust enrichment is not a separate cause of action." *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 739 (7th Cir. 2019). "Accordingly, the request for relief based on unjust enrichment is tied to the fate of the claim under the Consumer Fraud Act," which fails. *Id.* Plaintiff's common law fraud claim fails for the same reasons his ICFA claim fails. *See Reinitz v. Kellogg Sales Co.*, No. 21-cv-1239, at *9 (C.D. Ill. June 2, 2022).

    **3. Plaintiff fails to plead breach of express warranty, implied warranty of merchantability, or violation of the Magnuson-Moss Warranty Act.**

The claim for breach of an express warranty fails because Plaintiff does not allege the existence of any express contractual warranty. Further, Plaintiff did not give Walgreens any notice (let alone the required adequate notice) of the alleged breach, a necessary element. *See Ibarrola v. Kinda, LLC*, 83 F. Supp. 3d 751, 760 (N.D. Ill. 2015) (dismissing express warranty claim where plaintiff failed to give adequate notice). The Complaint states that "Plaintiff hereby or will provide notice to Defendant that it breached the express and implied warranties . . . ." Compl. ¶ 115. But raising an express warranty claim in a court pleading is "not . . . sufficient to meet the notice requirement under Illinois law." *Ibarrola v. Kinda, LLC*, 83 F. Supp. 3d 751, 760 (N.D. Ill. 2015).

Plaintiff also alleges that "Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its

main offices, and by consumers through online forums." Yet Illinois courts have rejected this argument too. *See O'Connor v. Ford Motor Co.*, 477 F. Supp. 3d 705, 715-16 (N.D. Ill. 2020).

Further, a product only "breaches the implied warranty of merchantability if it is not 'fit for the ordinary purposes for which such goods are used.'" *Oggi Trattoria and Caffe, Ltd. v. Isuzu Motors Am., Inc.*, 372 Ill. App. 3d 354, 361 (1st Dist. 2007) (quoting *Alvarez v. Am. Isuzu Motors*, 321 Ill. App. 3d 696, 703 (1st Dist. 2001)). Plaintiff alleges, on the one hand, that the Product was not merchantable because it could not "treat minor cuts and abrasions." Compl. ¶ 118. This allegation is implausible in light of the FDA's decision to the contrary, which is founded on a substantial body of evidence. Even the Complaint, in other allegations, admits among other things that "hydrogen peroxide has antiseptic properties," *id.* ¶ 19; the Product "remove[s] debris and microorganisms from the affected area that might slow the healing process," *id.* ¶ 41; and "[a] one time application of peroxide to clean a cut or scrap in a healthy individual is a good technique for wound disinfection," *id.* ¶ 9 n.1 (quoting *Medical Myth Buster: Hydrogen Peroxide and Wounds*).

Finally, the Magnuson-Moss Warranty Act simply "creates a federal cause of action for breach of warranty under state law." *Harris v. Kashi Sales, LLC*, --- F. Supp. 3d ----, 2022 WL 2390933, at *5 (N.D. Ill. 2022). Where, as here, "there are no viable claims for breach of express or implied warranty of merchantability, there can be no cause of action under this Act." *Id.*

### 4. Plaintiff fails to plead negligent misrepresentation.

"Generally, Illinois law does not permit a negligence action for recovery of economic loss alone." *Id.* Plaintiff alleges only economic loss. *See* Compl. ¶ 127 ("Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages."). Further, Plaintiff does not allege that Walgreens intended to deceive him. Thus, the claim should be dismissed. *See Akers*, 2022 WL 4585417, at *2 (dismissing claim for negligent misrepresentation related to Costco's allegedly deceptive labels).

## CONCLUSION

For all of the foregoing reasons, the Court should dismiss all of Plaintiff's claims with prejudice.

Dated: November 7, 2022                Respectfully submitted,

By:    /s/ Jonathan L. Lewis
Jonathan L. Lewis
Christopher M. Schafbuch
   (*pro hac vice* application forthcoming)
**LOWENSTEIN SANDLER LLP**
2200 Pennsylvania Ave. NW, Suite 500
Washington, DC 20037
Tel: 202.753.3824
Fax: 973.597.2551
jlewis@lowenstein.com
cschafbuch@lowenstein.com

Christopher W. Carmichael
**HENDERSON PARKS, LLC**
140 S. Dearborn St., Suite 1020
Chicago, Illinois 60603
Tel: (312) 262-2900
ccarmichael@henderson-parks.com

*Attorneys for Walgreen Company*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on **November 7, 2022**, the foregoing **Memorandum of Law in Support of the Motion to Dismiss** was electronically filed with the Clerk of the United States District Court for the Northern District of Illinois by filing through the CM/ECF system, which served a copy of the foregoing upon all counsel of record

By:/s/Christopher Carmichael