# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| JIM NOVOTNEY, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| v. | No: 22 CV 3439 |
| WALGREEN CO., | |
| Defendant. | |

## WALGREEN CO.'S REPLY IN SUPPORT OF ITS
## MOTION TO DISMISS PLAINTIFF'S COMPLAINT

**INTRODUCTION**

All of Plaintiff's claims challenging the statement "For treatment of minor cuts & abrasions" are preempted. Plaintiff makes little (if any) attempt to distinguish the mounds of case law that demonstrate that his claim is preempted. Instead, he wrongly believes that preemption only applies if the FDA approves of the challenged statement. Dkt. 21 at 9-10 (arguing that "'Treat' Indications Never 'Approved'"). That is not the law. *See* Dkt. 16 at 5-6 & n.5 (collecting cases). Preemption does not hinge on whether the challenged statement was "made to him, [and] not to the FDA." Dkt. 21 at 7. Remarkably, Plaintiff concedes this on the same page of his Opposition. *Id*. (quoting favorably Dkt. 16 at 6 ("Though 'preemption may apply even if the challenged statement has never been approved by the FDA'")).

Tellingly, Plaintiff makes almost no attempt to defend the supposed "numerous medical studies" that he alleges support his claim. As shown in Walgreens' Memorandum of Law in Support of its Motion to Dismiss ("Memorandum"), none of those articles "actually denounce the usefulness of hydrogen peroxide as [a] topical antiseptic for minor cuts and abrasions." Dkt. 16 at 9. In fact, none of those articles even mention the challenged statement—for treatment of minor cuts & abrasions—let alone say that anyone reading that statement on a bottle of hydrogen peroxide labeled "first aid antiseptic" would understand that statement to mean "hydrogen peroxide will assist in the healing process and shorten healing time." Compl. ¶ 25. No wonder all that Plaintiff offers in his Opposition is repeated citations to his conclusory "because I say so" allegations. *See, e.g.*, Dkt. 21 at 4 (citing Compl. ¶¶ 18 & 78).

In the end, there is no support for any of Plaintiff's claims. The Court should grant Walgreens' Motion to Dismiss and dismiss Plaintiff's Complaint with prejudice.

1

## ARGUMENT

A.     **PLAINTIFF'S CLAIMS ARE PREEMPTED.**

There are several fatal flaws with Plaintiff's attempts to fend off preemption: (1) Plaintiff applies the wrong analysis by focusing on whether the FDA expressly authorized a specific word ("treatment") instead of whether the FDA regulated the subject matter (first aid antiseptic generally, including 3% hydrogen peroxide); and (2) Plaintiff inaccurately cites, and intentionally misquotes, non-first aid antiseptic monographs in support of his argument. *See* Dkt. 21 at 7-9.

Despite Plaintiff's obfuscation, he cannot avoid the simple truth that his claims fall squarely within the scope of the FDA determination that hydrogen peroxide is "safe and effective" as a "first aid antiseptic." In reaching that conclusion, the FDA reviewed the then-current marketing of 3% hydrogen peroxide as a "first aid antiseptic" labeled "for treatment of minor cuts and abrasions" and did not object to it. *See* Dkt. 16 at 4, 6. Plaintiff cannot now try to impose additional non-identical state-law requirements after the FDA reached such a conclusion. Accordingly, Plaintiff's claims are preempted.

    1.     **Preemption applies even if the FDA never expressly approved the statement, "for treatment of minor cuts & abrasions."**

Plaintiff argues that preemption cannot apply because the FDA did not expressly permit the use of the specific word "treatment." Dkt. 21 at 9-10. But, in making such an argument, Plaintiff applies the wrong standard. The relevant legal question is not whether the FDA expressly authorized a specific word. *See, e.g, Turek v. General Mills, Inc.,* 662 F.3d 423, 426 (7th Cir. 2011) (holding preemption may apply even if a challenged statement has never been expressly approved by the FDA); *Robinson v. Walgreen Co.*, No. 20-cv-50288, 2022 WL 204360, at *4-5 (N.D. Ill. Jan. 24, 2022) (holding preemption barred claim that using unapproved term "Infant" on front label was misleading); *Bimont v. Unilever United States, Inc.*, No. 14-cv-7749-JPO, 2015

2

WL 5256988, at *3-4 (S.D.N.Y. Sept. 9, 2015) (citing *Turek* and rejecting argument that preemption applies only when the FDA has already specifically addressed proposed requirement).[1] Rather, the question is whether the state-law claim, like the one here, imposes labeling requirements that are "different from," "in addition to," or "otherwise not identical" with federal labeling requirements. 21 U.S.C. § 379r(a).

Courts in other jurisdictions, on similar facts, have rejected the argument Plaintiff makes. For example, in *Sapienza v. Albertson's Cos., Inc.,* No. 22-10968-RGS, 2022 WL 17404919, at *1 (D. Mass. Dec. 2, 2022), the plaintiff argued that the FDA never approved the phrase "rapid release" for over-the-counter acetaminophen gelcap products and thus defendant's packaging was misleading. The court held that plaintiff's claims were preempted even though the FDA never expressly approved the phrase because the FDA regulates gelcap product dissolution standards generally, which was the subject matter of the plaintiff's state-law claims. *Id.* at *4. "To find otherwise would require the FDA to list phrases in every possible permutation of similar words to have preemptive effect." *Id.* If the FDA had to approve a list of every possible phrase, such a result would "undermine the latitude Congress gives agencies to have authority over matters in which they have subject matter expertise[.]" *Id.*; *see also Goldstein v. Walmart, Inc.*, No. 22-cv-00088 (LJL), 2022 WL 16540837, at *3-4 (S.D.N.Y. Oct. 28, 2022) (holding plaintiff's claims were preempted and rejecting plaintiff's argument that FDA did not specifically authorize the use of the word "non-drowsy" to describe cough medicine containing dextromethorphan because FDA addressed subject matter, drowsiness caused by cough medicine, in monograph).

---

[1] The only case Plaintiff bothers to mention is the Seventh Circuit opinion in *Turek v. General Mills*. *See* Dkt. 21 at 9. But, pointing out that the Court there found that the only mention of insulin is in a Department of Agriculture regulation, and that federal law did not require the disclosures that the plaintiff there wanted, is irrelevant. *Id*. And, it certainly does not detract from the central holding of the case that preemption can apply even though the FDA never expressly approved of the challenged statement. *Turek*, 662 F.3d at 427.

3

Here, like the plaintiff in *Sapienza*, Plaintiff is focused on the FDA's approval of a specific word ("treatment"). And, just as the court rejected Plaintiff's argument in *Sapienza* because the FDA generally regulated the subject matter of plaintiff's state-law claims, here the FDA regulates the subject matter of Plaintiff's state-law claims (first aid antiseptic generally, including 3% hydrogen peroxide), described more fully in Section 2 below. *See, e.g.,* 56 Fed. Reg. at 33659 & 33677.

Plaintiff asks this Court to take a narrow view of 21 U.S.C. § 379r(a) and require the FDA to list every phrase that could have preemptive effect. *See* Dkt. 21 at 9-10. That is not the law. *See Sapienza*, 2022 WL 17404919, at *3. Rather, the statute is broad and prevents any labeling requirement that is not already imposed by federal law. *See* 21 U.S.C. § 379r(a). So, 21 U.S.C. § 379(r)(a) permits state-law actions brought to enforce federal requirements, not (as Plaintiff tries to do here) create new or different labeling requirements. Plaintiff's claims are preempted.

> **2. Preemption applies because "for treatment of minor cuts & abrasions" is consistent with what the FDA requires on the label.**

The FDA considered the subject matter here—first aid antiseptic generally, including 3% hydrogen peroxide—and the statement—for treatment of minor cuts & abrasions—which is consistent with what the FDA requires on the Product. So, preemption applies.

Notably, Walgreens' bottle states what the FDA requires. The label of first aid antiseptics must state that the product is a "first aid antiseptic" and must describe the product's use as, "first aid to help prevent the risk of infection in minor cuts, scrapes, and burns." 56 Fed. Reg. at 33677 (cleaned up). The bottle here does exactly that. *See* Compl. ¶¶ 14, 16; *see also* Dkt. 16 at 4, 6.

When determining that the Product "achieves its intended benefits," the FDA reviewed the then-current marketing of 3% hydrogen peroxide as a "first aid antiseptic" labeled "[f]or treatment of minor cuts and abrasions." Dkt. 16 at 6 (quoting 56 Fed. Reg. at 33659). It approved this use.

*Id.* In doing so, the FDA noted that "OTC first aid antiseptics" (like the 3% hydrogen peroxide at issue here) "are used ***for the first aid treatment of minor cuts, scrapes, and burns***." Dkt. 16 at 6 (quoting 56 Fed. Reg. at 33674) (emphasis added). Tellingly, Plaintiff ignores that the challenged statement—for treatment of minor cuts & abrasions—when coupled with the other statement on the front of the label—first aid antiseptic—is consistent with (if not nearly identical to) how the FDA refers to the Product in the relevant monograph. *Id.* at 6.[2] Plaintiff's claims are preempted.

### 3. Plaintiff's reliance on non-first aid antiseptic monographs do not save his claims from preemption.

Having failed to refute Walgreens' showing that preemption applies, Plaintiff seeks refuge in irrelevant non-first aid antiseptic monographs that do not save his claims. *See* Dkt. 21 at 6-8.[3] Tellingly, none of the non-first aid antiseptic monographs that Plaintiff relies on address whether the challenged statement—for treatment of minor cuts & abrasions—is consistent with (it is) the FDA labeling requirements for first aid antiseptics.

To begin, Plaintiff claims that the FDA "rejected an attempt to link '[the] reduction of the number of bacteria in wounds wi[th] shorten[ed] dermal and epithelial healing times.'" Dkt. 21 at 7 (quoting 42 Fed. Reg.at 17648). But, Plaintiff's quote is a reference to antibiotic ointment and not hydrogen peroxide used as a first aid antiseptic. *See* 42 Fed Reg. at 17649 ("The panel

---

[2] Plaintiff argues that Walgreens is not entitled to preemption because (1) Walgreens was not the manufacturer who provided the original submission to the FDA and (2) Walgreens had no relationship to that manufacturer. *See* Dkt. 21 at 10. But, who submitted the statements to the FDA and whether Walgreens had any relationship to the original submitter is irrelevant. Rather, the relevant inquiry for this Court is whether the FDA reviewed, and approved, the subject matter of Plaintiff's state law claims (first aid antiseptic generally, including 3% hydrogen peroxide). It did. *See supra* Section A(2). Even so, the FDA specifically addressed the use of the word "treatment" in its first aid antiseptic monograph, referencing it or some variation of it a total of more than 50 times, comporting not only with the word's common meaning but also with the way the word is used on Walgreens' packaging.

[3] Plaintiff's reliance on these non-first aid antiseptic monographs appear to be an attempt to bolster the articles cited in his Complaint. As shown below, none of those articles mention the challenged statement—for treatment of minor cuts & abrasions—let alone say that anyone reading that statement on a bottle of hydrogen peroxide labeled "first aid antiseptic" would understand that statement to mean what Plaintiff claims it to mean.

concludes that the role of an antibiotic ointment in wound repair is still largely unknown."). Notably, the monograph Plaintiff cites does not even mention hydrogen peroxide.

Plaintiff's reliance on the oral healthcare drug monograph fares no better. *See* Dkt. 21 at 7. Take the quote from Plaintiff's Opposition that, "'it is difficult to imagine circumstances whereby hydrogen peroxide kills bacteria, but is not injurious to tissue." *Id*. (quoting 47 Fed. Reg. at 22876). That quote is about a lack of "controlled studies to establish the effectiveness of hydrogen peroxide ***as an antimicrobial agent for the treatment of symptoms such as sore mouth and sore throat***" (47 Fed. Reg. at 22876, emphasis added), not as a first aid antiseptic "for treatment of minor cuts & abrasions." It does not (as Plaintiff claims) support the notion that "the Product should not be used 'For Treatment of Minors Cuts & Abrasions.'" Dkt. 21 at 7.

The other quotes Plaintiff plucks from the oral healthcare drug monograph are just as bad. *Id*. at 7. Those quotes are about antimicrobial agents used in the "mouth and throat" and not about 3% hydrogen peroxide used as a first aid antiseptic "for the treatment of minor cuts & abrasions." 47 Fed. Reg. at 22831-83. It is likewise disingenuous for Plaintiff to quote the oral health care drug monograph out of context and then say that those quotes support his claim that certain phrases ("Aids, speeds, helps, augments, or hastens healing") when used with "topical antibiotics" are "misleading and confusing to the consumer and unacceptable for labeling of skin wound protectants and antibiotics for skin wound treatment" because they "imply to the consumer that antibacterial products may play a primary role in the healing process and can shorten healing time." Dkt. 21 at 7-8 (quoting 42 Fed. Reg. at 17654). As noted above, this monograph (topical antibiotics) does not even mention hydrogen peroxide.

In the end, Plaintiff has done nothing to refute the showing that all of his claims based on the challenged statement—for treatment of minor cuts & abrasions—are preempted.

B.  **PLAINTIFF FAILS TO ADEQUATELY ALLEGE AN ICFA CLAIM.**

  1.  **Plaintiff failed to allege that Walgreen's labeling is deceptive.**

Plaintiff argues that he has alleged a claim under ICFA because a reasonable consumer would believe that "treat" means to "shorten healing time." Dkt. 21 at 3. There are several problems with this argument.

  a.  *Plaintiff cannot use his personal opinion to support his claims.*

Plaintiff only uses his personal opinions to support this claim. Dkt. 21 at 3 (stating, without any factual allegations, that "Plaintiff's expectation" that the product could treat minor cuts and abrasions was not "unreasonable."). This is insufficient. A plaintiff must allege facts showing deception is plausible, not just allege mere conclusions of what a reasonable consumer may believe. *See Cristia v. Trader Joe's Co.*, No. 22 CV 1788, 2022 WL 17551552, at *5 (N.D. Ill. Dec. 9, 2022) (dismissing ICFA claims because "plaintiff provides only conclusory factual allegations to suggest that unspecified 'consumers' agree with her subjective interpretation of the label[.]"); *Karlinski v. Costco Wholesale Corp.*, Case No. 1:21-CV-03813, 2022 WL 2867383, at *4-7 (N.D. Ill. July 21, 2022) (dismissing ICFA claim involving ice cream bar, holding phrase "chocolate almond dipped vanilla ice cream bars" on product's front label did not convey to reasonable consumer that coating contains no vegetable oils).

Nevertheless, Plaintiff relies on the Federal Trade Commission's Statement of Deception to argue that "[a] material practice that misleads a significant minority of reasonable consumers is deceptive." Dkt. 21 at 3. But a single plaintiff (like the one here) is not a significant minority and, as shown below, Plaintiff's belief here is hardly "reasonable." Indeed, the Complaint contains no

allegations regarding what portion of the population is supposedly misled beyond the single Plaintiff here.[4] This is insufficient to support a claim.

### b. *Plaintiff offers no support for his interpretation.*

Plaintiff has failed to provide any journals, articles, or surveys that would support his interpretation. *See Karlinski*, 2022 WL 2867383, at *5 (noting survey was "not the same thing as saying that these same respondents concluded that the Product's coating was not chocolate or that they believe chocolate must be made mostly or exclusively from cacao bean ingredients."). As shown in the Memorandum, none of the articles Plaintiff relies on "actually denounce the usefulness of hydrogen peroxide as [a] topical antiseptic for minor cuts and abrasions." Dkt. 16 at 9. Tellingly, none of those articles even mention the challenged statement—for treatment of minor cuts & abrasions—let alone say that anyone reading that statement on a bottle of hydrogen peroxide labeled "first aid antiseptic" would understand that statement to mean "hydrogen peroxide will assist in the healing process and shorten healing time." Compl. ¶ 25. As such, Plaintiff can only offer in his Opposition repeated citations to his conclusory "because I say so" allegations. *See* Dkt. 21 at 3-4.

Exposing that the Complaint's sources do not support Plaintiff's claim is not "mischarateriz[ing]" them. Dkt. 21 at 2. Indeed, Plaintiff admits that Walgreens is "accurate" in

---

[4] It's unclear why Plaintiff cites to *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 423, 775 N.E.2d 951, 964 (2002) in support of his argument. There, the court dismissed the plaintiff's claims under the ICFA because the plaintiff failed to plead allegations related to unfair conduct. *Robinson*, 201 Ill 2d at 421-24, 775 N.E.2d at 962-64. Here, the question is whether others were misled and not just Plaintiff. *Robinson* does not offer Plaintiff any support in that respect. The same is true for the other cases cited by Plaintiff. *In the Matter of Bristol-Myers Co., et al.*, 85 F.T.C. 688 (1975) (noting Bristol Meyers intended to deceive by running advertisements on national television that deceived "a substantial portion of the purchasing public into" belief that Dry Ban was superior to competing anti-perspirant sprays); *In the Matter of Am. Home Prod. Corp.*, 98 F.T.C. 136 (1981) (explaining that certain copy tests, but not those used in study at issue, found that only 22% of those contacted remembered particular commercial whereas study at issue found that "some not insignificant number of consumers could have" misunderstood commercial about specific headache tablets). Here, the Complaint contains no allegation regarding what percentage (if any) of consumers hold the same belief as Plaintiff.

8

its assessment that those articles do not "contradict[], let alone abrogate the Food and Drug Administration's science-based decisions about how to regulate labeling for over-the-counter 3% hydrogen peroxide." *Id.* at 3 (quoting Dkt. 16 at 11). Put simply, the allegations do not "establish[]" that the challenged statement "is false and misleading because no credible scientific and medical evidence supports" the use of hydrogen peroxide as a first aid antiseptic "for [the] treatment of minor cuts & abrasions." *Id.* at 4 (citing Compl. ¶ 18).

As shown in the Memorandum, the supposed "scientific and medical evidence" does no such thing. In any event, that "evidence" does not overcome the FDA determination that hydrogen peroxide, when used as a first aid antiseptic, does treat "minor cuts & abrasions"—a determination that the FDA confirmed again as recently as September 21, 2021. *See* Dkt. 16 at 1-2. Curiously, Plaintiff's Opposition does not even mention that, on September 21, 2021, the FDA confirmed that the Product is "safe and effective"—which is a clear rejection of the supposed science advanced by Plaintiff. *See id.* at 4 n.3.

Plaintiff's citations to his Complaint do not help him either. Plaintiff argues that his "expectation" that the "Product could treat minor cuts and abrasions" is not the type of unreasonable or fanciful interpretation the Seventh Circuit held warranted dismissal. *See* Dkt. 21 at 3-4. Here, he simply cites to Paragraph 78 of the Complaint in support. *Id.* But that Paragraph merely says, "Plaintiff believed and expected the Product could treat minor cuts and abrasions because that is what the representations and omissions said and implied, on the front of the label and the absence of any reference or statement elsewhere on the Product." Compl. ¶ 78. Such conclusory allegations need not be accepted by the Court. *See Wach v. Prairie Farms Dairy, Inc.*, No. 21 C 2191, 2022 WL 1591715, *3 (N.D. Ill. May 19, 2022) ("[Plaintiff's] allegations about

9

consumer expectations—i.e., that a reasonable consumer would expect. . .—are conclusory statements that I need not accept") (citation omitted).

Next, Plaintiff concedes that there is nothing actionable about Walgreens recommending the purchase of its hydrogen peroxide for its FDA approved use by saying "Walgreens Pharmacists Recommended" on the back label of the bottle where it also states, "[O]ur pharmacists recommend the Walgreens brand." *Compare* Dkt. 16 at 12-13 (explaining why "Walgreens Pharmacists Recommended" phrase is not actionable) *with* Dkt. 21 at 4 (agreeing). Now, Plaintiff claims that statement must be "viewed in connection with the label statement 'For treatment of minor cuts & abrasions.'" Dkt. 21 at 4. But Plaintiff's new "view[]" does not appear anywhere in his Complaint where he alleges in a single line that "[t]he statement that the Product is 'Walgreens Pharmacists Recommended' is contrary to medical and scientific evidence and causes consumer harm through promoting the purchase of the Product." Compl. ¶ 42. Tethering Walgreens' recommendation to purchase its product for its FDA approved use to Plaintiff's "allegation that the Product is misleading because" it says "[f]or treatment of minor cuts & abrasions"—which he claims is not supported by "medical and scientific evidence"—does not save this claim either. Dkt. 21 at 4. It fails too, because that "medical and scientific evidence" does not say what Plaintiff claims it does and, most importantly, it cannot (and does not) overcome what the FDA has already determined— and confirmed again as recently as September 21, 2021—that the Product "achieves its intended benefit," and it is "both safe and effective for use" as a first aid antiseptic. 56 Fed. Reg. at 33659; *see also* 86 Fed. Reg. 52474 (FDA Rule deeming first aid tentative monograph final).

    c.   **There is no lesser pleading standard to apply here.**

In the Memorandum, Walgreens established that Rule 9(b)'s particularity requirement also dooms Plaintiff's ICFA claim. *See* Dkt. 21 at 8. Plaintiff's response is to now allege that he is

bringing an "unfair acts" claim. *Id.* at 4-5 (claiming he "satisfied" the "'unfair conduct prong of ICFA"). Remarkably, Plaintiff now argues his Complaint actually alleges that "'the packaging of the [hydrogen peroxide solution] is covered by the ICFA's'" unfair prong "by causing consumers to 'expect[] [it] could treat minor cuts and abrasions.'" *Id.* (citing Compl. ¶ 78).⁵

But the Complaint does not allege an unfair act as it relates to the ICFA claim. *See* Compl. ¶¶ 94-99.⁶ Instead, Plaintiff alleges that Walgreens' label is false, misleading, and deceptive. Compl. ¶ 96. Even if the word "unfair" is included among the words "false, misleading, and deceptive," when a plaintiff alleges practices that "are both deceptive *and* unfair" Rule 9(b) still applies. *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 736 (7th Cir. 2019) (emphasis in original and applying Rule 9(b)). It makes no difference because under either Rule 8 or 9 Plaintiff's own opinion of what the word "treat" means is insufficient to allege what a reasonable consumer might believe. As demonstrated in Walgreens' Memorandum and described more fully above, Plaintiff has failed to properly allege the necessary elements, and the claim should be dismissed.

### 3. Plaintiff failed to allege an intent to deceive.

Plaintiff contends that he has satisfied the who, what, when, where, and how of the fraud in his Complaint. Dkt. 21 at 6. But Plaintiff does not cite where in the Complaint he alleges the required intent to deceive. *Id.* That's because Plaintiff only states in a conclusory fashion that "Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent

---

⁵ The word "unfair" does not appear in the paragraph Plaintiff cites in support of his new made-up claim. *See* Compl. ¶ 78 ("Plaintiff believed and expected the Product could treat minor cuts and abrasions because that is what the representations and omissions said and implied, on the front label and the absence of any reference or statement elsewhere on the Product.").

⁶ The word "unfair" does appear once in conclusory fashion in the "Class Allegations" section of the Complaint (Compl. ¶ 88), and twice more in equally conclusory fashion in the "Violation of State Consumer Fraud Acts (On Behalf of the Consumer Fraud Multi-State Class)" (Compl. ¶¶ 100, 103).

11

with its representations." Compl. ¶ 131. This is insufficient to allege intent. *See, Kinman v. Kroger Co.,* No. 21 C 1154, 2022 WL 1720589, at *7 (N.D. Ill. May 27, 2022) (holding plaintiff's allegations of intent were conclusory where plaintiff alleged exact same allegation as here "fraudulent intent is evinced by its knowledge that the Product was not consistent with its representation."). Indeed, in the very case that Plaintiff cites, the court held that the exact same allegation—Walgreens' fraudulent intent "is evinced by its knowledge that the Product was not consistent with its representations"—was too conclusory to satisfy Rule 9(b)'s pleading standard for common-law fraud.[7]

Plaintiff cannot state a claim under the ICFA, and his claims should be dismissed.[8]

## C. PLAINTIFF'S NON-ILLINOIS CLAIMS SHOULD BE DISMISSED.

Plaintiff argues that the Seventh Circuit defers standing objections until the class is certified. *See* Dkt. 21 at 10-11. This is wrong. *See* Dkt. 16 at 7. Courts in the Seventh Circuit routinely dismiss claims at the pleading stage where plaintiffs "attempt to assert claims on behalf of class members in states where they do not reside and were not injured." *Smith-Brown v. Ulta Beauty, Inc.*, No. 18 C 610, 2019 WL 932022, at *6 (N.D. Ill. Feb. 26, 2019); *see also In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, No. 09 CV 3690, 2013 WL 4506000, at *6 (N.D. Ill. Aug. 23, 2013) (resolving standing issue before class certification); *Tillman v. U.S. Energy Sav. Corp.*, No. 08 C 1641, 2008 WL 2754813, at *2 (N.D. Ill. July 14, 2008) (same). And, where, as here, all claims by class members would be adjudicated under differing laws of numerous

---

[7] Plaintiff also cites this case for the proposition that the court has approved the same allegations as those made here where the defendant misled the plaintiff into buying a product and either paid more or wouldn't have purchased the product. *See* Dkt. 21 at 6 (citing *Rudy*, 583 F. Supp. 3d at 1165). But the particular quote Plaintiff uses from *Rudy* relates to whether plaintiff sufficiently pled actual damages for an ICFA claim (which is not at issue here), not whether she properly alleged the who, what, when, where, and how of the claim (which is). *Id.*

[8] The unjust enrichment and common law fraud claims fail for the same reasons the ICFA claim fails. *See* Dkt. 16 at 13. Further, Plaintiff concedes that unjust enrichment is not a separate cause of action under Illinois law. *See* Dkt. 21 at 14.

jurisdictions, a "single class is not manageable." *In re Bridgeston/Firestone, Inc.*, 288 F.3d 1012, 1018 (7th Cir. 2002). Here, Plaintiff alleged a multi-state class from "Montana, Louisiana, South Carolina, Wyoming, Idaho, Kentucky, Kansas, Iowa, Mississippi, and Utah . . . for each cause of action alleged." Compl. ¶ 86. But, Plaintiff does not allege that he lives in any of those states and never explains what law might apply to the class. *Id.* Accordingly, Plaintiff lacks standing to bring the claims, and they should be dismissed.

### D. PLAINTIFF FAILS TO ADEQUATELY PLEAD ANY WARRANTY CLAIMS.

Plaintiff's claims for breach of express warranty, implied warranty of merchantability, or violation of the Magnuson-Moss Warranty Act ("MMWA") must all fail because Plaintiff failed to sufficiently plead each one.

First, Plaintiff failed to plead the notice requirement for the breach of express and implied warranty and the MMWA. Nevertheless, Plaintiff argues that he satisfied the notice requirement by simply filing the instant complaint. *See* Dkt. 21 at 11-12. That is not the law in Illinois. *See* Dkt. 16 at 13-14; 810 ILCS 5/2-607(3)(a) ("the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy"); *Kinman*, 2022 WL 1720589, at *3 (dismissing express and implied warranty claims as well as MMWA claims for failure to give pre-suit notice). Plaintiff does not allege he provided any notice to Walgreens. Therefore, Plaintiff's warranty claims should be dismissed.

Second, Plaintiff contends that the breach of implied warranty claim is rooted in hydrogen peroxide's inability to shorten healing time. Dkt. 21 at 12. But Plaintiff fails to plead that hydrogen peroxide is unfit for its ordinary purpose. *See* Dkt. 16 at 14. Plaintiff cannot do so because the FDA has recognized that hydrogen peroxide is safe and effective as a first aid antiseptic. Plaintiff admits as much in his Complaint. *See* Compl. ¶¶ 9, 19, 41. The only

13

allegations Plaintiff makes with respect to this claim are conclusory. *See* Compl. ¶ 119. Therefore, the claim must be dismissed.

Finally, with respect to the MMWA claim, Plaintiff asserts that hydrogen peroxide's failure to treat cuts and abrasions is a defect. Dkt. 21 at 12. But, since the FDA expressly permits hydrogen peroxide as a first aid antiseptic and the express and implied warranty claims must fail, this claim must also fail.[9]

### E. PLAINTIFF'S NEGLIGENT MISREPRESENTATION CLAIM FAILS.

Plaintiff asserts there is a special relationship to support his negligent misrepresentation claim. Dkt. 21 at 13. But Plaintiff fails to acknowledge that Illinois law does not permit a negligence action for recovery of economic loss. *See* Dkt. 16 at 14. Plaintiff only alleges economic loss (Compl. ¶ 127), so this claim must fail.

### F. PLAINTIFF CANNOT OBTAIN INJUNCTIVE RELIEF WHEN HIS CLAIMS FAIL.

Plaintiff argues that Walgreens waived any argument against an injunction, and Plaintiff is still entitled to injunctive relief due to future harm. Dkt. 21 at 14. Walgreens did not waive any argument against an injunction because Plaintiff is not entitled to an injunction if he cannot state a claim. Walgreens did not need to argue that Plaintiff is not entitled to an injunction, because none of his claims are viable and, thus, no injunction can ever be entered.

### CONCLUSION

For the reasons stated here and in Walgreens' Memorandum, Defendant respectfully requests that the Court dismiss Plaintiff's Complaint with prejudice.

---

[9] Each of Plaintiff's warranty claims also fail for the independent reason that they are all premised on the same flawed theory of deception as his ICFA claim. *See*, *e.g.*, *Karlinski*, 2022 WL 2867383, at *7 ("because Plaintiff's theory of deception fails, his theories of breach of express and implied warranty and the MMWA also fail") (internal citation omitted).

Dated: January 10, 2023 	Respectfully submitted,

By:    */s/ Jonathan L. Lewis*
Jonathan L. Lewis
**LOWENSTEIN SANDLER LLP**
2200 Pennsylvania Ave. NW, Suite 500
Washington, DC 20037
Tel: 202.753.3824
Fax: 973.597.2551
jlewis@lowenstein.com

Christopher W. Carmichael
**HENDERSON PARKS, LLC**
140 S. Dearborn St., Suite 1020
Chicago, Illinois 60603
Tel: (312) 262-2900
ccarmichael@henderson-parks.com

*Attorneys for Walgreen Co.*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on January 10, 2023, the foregoing Reply in Support of Its Motion to Dismiss Plaintiff's Complaint was electronically filed with the Clerk of the United States District Court for the Northern District of Illinois by filing through the CM/ECF system, which served a copy of the foregoing upon all counsel of record.

By: /s/ Christopher Carmichael